

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 9, 2007

*By Hand and ECF Filing*

Honorable Denise L. Cote
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re: *United States v. Rafael Barrios*, 07 Cr. 658 (DLC)

Dear Judge Cote:

      The Government respectfully submits this letter in response to the defendant's motion to suppress evidence obtained in connection with his arrest on March 30, 2007, by members of the New York City Police Department (NYPD). The suppression motion challenges the admissibility of two categories of evidence: (1) statements the defendant made after his arrest; and (2) cocaine and other physical evidence found in the trunk of his car in the course of an inventory search.

      In support of his motion, the defendant advances two contentions. First, he argues that "the police began asking [him] questions" after placing him in custody but before administering *Miranda* warnings, and therefore that the Fifth Amendment prohibits introduction of any statements he provided in response. (Memorandum in Support of Defendant's Motion, at 16 [hereinafter "Mem."]; Mem., Exh. E., ¶ 2).[1] Second, the defendant contends that although the

---

      [1] The affidavit that Barrios submitted in support of the motion is not signed, notarized, or sworn. The Government responds to the arguments premised on the factual allegations in that affidavit on the merits and on the assumption that this omission was unintentional. The Government also contends, however, that unless the defendant promptly submits a sworn affidavit, the Court should deny without a hearing the portion of the suppression motion challenging the admissibility of the defendant's statements. Without such an affidavit, the defendant's Fifth Amendment argument lacks any factual corroboration. *See, e.g.*, *United States v. Richardson*, 837 F. Supp. 570, 572 (S.D.N.Y. 1993) ("It is well established that '[w]ithout a supporting affidavit of someone with personal knowledge of the underlying facts, the court need not resolve factual disputes that may be raised by the moving papers.'") (quoting *United States v. Caruso*, 684 F.Supp. 84, 87 (S.D.N.Y.1988)); *United States v. Ahmad*, 992 F.Supp. 682, 685 (S.D.N.Y. 1998); *United States v. Gillette*, 383 F.2d 843 (2d Cir. 1967) (holding that where the defendant did not submit an affidavit in support of his motion to suppress, "there was no factual

The Honorable Denise L. Cote
October 9, 2007
Page 2

police arrested him upon discovering a handgun underneath a "dark car" that did not belong to him, they nevertheless impounded and conducted an inventory search of his car, which was parked "some feet away." (Mem. 4-5). According to the defendant's affidavit and those of two civilian witnesses, the defendant's car was parked legally, and neither the defendant nor his companions accessed that car in the presence of the officers. (Mem. 5; Mem., Ex. C ¶¶ 2-3; Mem., Ex. D ¶¶ 2-3; Mem., Ex. E ¶ 2). On that basis, the defendant argues that the seizure and subsequent inventory search of his vehicle were unreasonable under the Fourth Amendment.

For the reasons explained below, the Government submits that factual disputes presented by the defendant's motion warrant an evidentiary hearing. At such a hearing, the Government intends to show that, contrary to the defendant's conclusory (and currently unsworn) assertions, none of his statements was the product of custodial "interrogation" requiring *Miranda* warnings. The Government also intends to show that the defendant's version of the facts surrounding the impoundment of his car is false. The officers properly impounded and conducted an inventory search of the defendant's Chrsyler because, among other things, it was illegally parked in a bus stop at the time they retrieved it. That car, moreover, was the same one beneath which the officers found a loaded gun and next to which the defendant was standing when he was arrested.

The Court has scheduled an evidentiary hearing in this matter for 9:30 a.m. on Thursday, October 25, 2007. The Government respectfully requests that the Court rule on the scope of that hearing in advance so that the Government may prepare accordingly.

BACKGROUND

As set forth in Complaint 07 Mag. 639 (hereinafter the "Complaint," attached as Exhibit A to the Defendant's Motion), the Government expects that the evidence presented at a hearing would establish the following facts.

On the evening of March 30, 2007, three NYPD officers were conducting a routine patrol of the 42nd Precinct in an unmarked car. (Complaint ¶ 4(a)). As the officers were driving north on Prospect Avenue, the saw four men standing next to a car, which the officers recognized as a Chrysler 300M, parked in a bus stop. (*Id.*) The Officers also saw a bottle of liquor on top of the car and each of the men next to it holding plastic cups. (*Id.*). The Arresting Officer, who was sitting in the rear passenger seat, told the officer driving the patrol car to stop so that he could investigate whether there were grounds to issue a summons for violation of laws banning open alcohol containers. (Complaint ¶ 4(c)). As the Arresting Officer approached the men, he saw the defendant reach into the waistline of his pants, pull out a black object, and then drop the object underneath the car. (Complaint ¶ 4(c)). Based on the size and shape of that object, as well as the sound that it made when it hit the pavement, the Arresting Officer believed that the object was in fact a gun. (*Id.*). He then placed the defendant in handcuffs and retrieved the gun, which the

issue to be resolved and the denial of a hearing was correct").

The Honorable Denise L. Cote
October 9, 2007
Page 3

Arresting Officer discovered was loaded. The weapon was in fact an IM-Metal HS2000 9 millimeter semi-automatic handgun. (Complaint ¶ 5). As the Arresting Officer secured the weapon, the two others officers, concerned about the possibility of additional weapons, conducted a protective frisk of the men standing around the Chrysler. (Complaint ¶ 4(e)).

At the same time, the Arresting Officer noticed that the right rear door of the Chrysler was ajar, so he asked all of the men, including the defendant, to whom the car belonged. All of them, including the defendant, stated that they did not own the Chrysler and did not know who did. (Complaint ¶ 4(f)). The officers also asked the men, including the defendant, for identification. (Complaint ¶ 4(g)). The defendant responded that he did not have identification and that his name was "Joel Bennett." (*Id.*). At that point, another officer walked the defendant to a patrol car. As the defendant was entering the vehicle, he spontaneously stated, "Damn, you got me." (Complaint ¶ 4(i)).

On the scene, the Arresting Officer conducted a search of the New Jersey license plate on the Chrysler under which he had retrieved the gun. (Complaint ¶ 4(h)). That search revealed that the Chrysler was registered to an individual named "Rafael Barrios" with a New Jersey address. (*Id.*).

The defendant was transported to the 42nd Precinct, where the Arresting Officer conducted a search of his person incident to the arrest. (Complaint ¶ 4(j)). During that search, the Arresting Officer found in the defendant's pocket two bags of marijuana, as well as a New Jersey driver's license that was issued to "Rafael Barrios" and that bore the defendant's photograph. (*Id.*). The address on the license was the same New Jersey address to which, according to the records search the Arresting Officer had conducted on the scene, the Chrysler was registered. (*Id.*).

In the search incident to arrest, the Arresting Officer also found in the defendant's pocket a set of keys containing one large key. (Complaint ¶ 4(k)). The Arresting Officer asked the defendant what that key was for, and the defendant responded that it was for a Chrysler Sebring. (*Id.*). Believing that the key was in fact for the Chrysler 300M under which the gun was recovered, the Arresting Officer notified his supervisor, who in turn gave the key to two other officers and instructed them to retrieve the Chrysler 300M in order to safeguard the vehicle and its possessions and because the car was illegally parked in a bus stop. (*Id.*).

After the Chrysler was retrieved and brought to the 42nd Precinct, the Arresting Officer conducted an inventory search. (Complaint ¶ 4(l)). In the trunk of the Chrysler, he found a clear plastic envelope containing 496 grams – just under a half kilogram – of powder cocaine, as well as a box of "ziploc" bags. (*Id.*; Complaint ¶ 6).

The Honorable Denise L. Cote
October 9, 2007
Page 4

## DISCUSSION

A.    The Government Agrees That An Evidentiary Hearing Is Necessary To Resolve
      The Defendant's Challenge To The Admissibility Of His Post-Arrest Statements

The Government submits that a hearing is necessary on the first question the defendant presents: whether introduction of the defendant's statements would violate his constitutional right against self-incrimination. At the hearing, the Government intends to establish that those statements are admissible on one or more of three independent grounds, each of which is well established in Fifth Amendment doctrine.

1.    Applicable Law

In *Miranda v. Arizona*, the Supreme Court determined that the Fifth Amendment's prohibition against compelled self-incrimination requires that custodial interrogation be preceded by advice to the defendant that he has the right to remain silent and the right to presence of an attorney. *Miranda*, 384 U.S. 346 (1966). The *Miranda* rule is subject to two principles that are particularly important in this case.

First, the protections of *Miranda* apply only to statements elicited by law enforcement officers through custodial "interrogation." *See Miranda*, 384 U.S. at 482. Thus, the Fifth Amendment poses no bar to introduction of post-arrest statements that the defendant makes spontaneously. *See Colorado v. Connelly*, 479 U.S. 157 (1986); *United States v. Colon*, 835 F.2d 27, 30 (2d Cir. 1987). *See also Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today"); *United States v. Hayes*, 120 F.3d 739, 744 (8th Cir. 1997) ("*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers.") The Government bears the burden of proving by the preponderance of the evidence that a defendant made his statements spontaneously and not as the result of interrogation. *See United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991).

Second, "interrogation" for *Miranda* purposes occurs only when police officers engage in "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980); *Pennsylvania v. Muniz*, 496 U.S. 582, 600-01, 110 S.Ct. 2638, 2649, 110 L.Ed.2d 528 (1990) (plurality opinion). Because "the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301-02 & n.5. Thus, police inquiries that are "normally attendant to arrest and custody" do not generally trigger *Miranda* concerns, since the police do not have reason to believe that such questions will elicit an incriminating answers. *Muniz*, 496 U.S. at 601 (plurality opinion). As the Second Circuit has recognized,

The Honorable Denise L. Cote
October 9, 2007
Page 5

> [t]he collection of biographical or pedigree information through a law enforcement
> officer's questions during the non-investigative booking process that typically follows a
> suspect's arrest . . . does not ordinarily implicate the prophylactic protections of *Miranda*,
> which are designed to protect a suspect only during investigative custodial interrogation.
> Such interrogations customarily involve questions of a different character than those that
> are normally and reasonably related to police administrative concerns.

*Rosa v. McCray*, 396 F.3d 210, 221 (2d Cir. 2005); *United States v. Gotchis*, 803 F.2d 74, 79 (2d
Cir. 1986) ("[T]he Supreme Court was concerned with protecting the suspect against
interrogation of an investigative nature rather than the obtaining of basic identifying data required
for booking and arraignment.") (internal quotation marks omitted). Accordingly, officers may
engage in some form of questioning – including about the suspect's name, personal history,
background, employment, and other matters related to "police administrative concerns" – without
conducting an "interrogation" requiring the provision of *Miranda* warnings. *Id.* at 78-79; *Rosa*,
396 F.2d at 221; *United States v. Carmona*, 873 F.2d 569, 573 (2d Cir. 1989); *United States ex
rel. Hines v. LaVallee*, 521 F.2d 1109 (2d Cir. 1975).

2.     Discussion

The Government seeks to introduce the following four post-arrest statements by the
defendant, none of which was preceded by *Miranda* warnings:

- The defendant answered the Arresting Officer's request for identification by
  stating that he did not possess any identification documents and that his name was
  "Joel Bennett." (Complaint ¶ 4(g)).

- In response to the Arresting Officer's question about who owned the Chrysler, the
  defendant stated that he did not own the car and did not know who did.
  (Complaint ¶ 4(f)).

- Upon entering the patrol car for transportation to the precinct, the defendant
  stated, "Damn, you got me." (Complaint ¶ 4(i));

- At the precinct, the defendant stated to the Arresting Officer that the car key
  retrieved from the defendant's pocket during a search incident to arrest was for a
  Chrysler Sebring. (Complaint ¶ 4(k)).

The first, second, and fourth statements are admissible because they were not elicited in
response to "interrogation" for purposes of *Miranda*. Regarding the first statement, the Second
Circuit has squarely held that asking a defendant his name constitutes a "routine booking
question" and therefore does not implicate Fifth Amendment concerns. *Rosa*, 396 F.3d at 221.
Indeed, "a suspect who refuses to furnish his name or address may be ordered by the court to
furnish information that will facilitate his identification, such as fingerprints." *Hines*, 521 F.2d at

The Honorable Denise L. Cote
October 9, 2007
Page 6

1112; *cf. Illinois* v. *Lafayette*, 462 U.S. 640, 646 (1983) (inspection of arrestee's personal property, including wallet, permissible at station house to ascertain or verify identity).

Similarly, with respect to the second and fourth statements, the Arresting Officer's questions about whether the defendant owned the Chrysler, and about the purpose of the car key discovered in the defendant's pocket, were "reasonably related to administrative concerns, and w[ere] neither intended, nor reasonably likely, to elicit an incriminating response." *Rosa*, 396 F.3d at 221. At the time that the Arresting Officer asked those questions – both on the scene and at the station house – he was concerned about the routine administrative matter of his responsibilities regarding the Chrysler, which was then parked illegally in a bus stop with its right rear door ajar. (Complaint ¶ 4(a), (f)). In particular, the Arresting Officer needed to determine whether the Chrysler belonged to someone who could move it from its current location and who could safeguard the car and its contents, or instead whether, upon the defendant's arrest, safekeeping and removal of the Chrysler became the obligation of the police.[2]

Equally clear, the Arresting Officer had no reason to believe, and therefore should not

---

[2] In addition, the Arresting Officer's question at the time of the arrest regarding the ownership of the Chrysler falls within the "public safety" exception to the *Miranda* rule. *See New York* v. *Quarles*, 467 U.S. 649 (2006). Under that exception, "*Miranda* warnings need not precede 'questions reasonably prompted by a concern for the public safety' or for the safety of the arresting officers," *United States* v. *Reyes*, 353 F.3d 148, 152 (2d Cir. 2003) (quoting *Quarles*, 467 U.S. at 656, 104 S.Ct. 2626), "so long as the questioning 'relate[s] to an objectively reasonable need to protect the police or the public from any immediate danger.'" *United States* v. *Newton*, 369 F.3d 659, 677 (2d Cir. 2004) (quoting *Quarles*, 467 U.S. at 659 n. 8) (alteration in original). To satisfy this exception, questions "may not be investigatory in nature or 'designed solely to elicit testimonial evidence from a suspect,'" *Estrada*, 430 F.3d at 612 (quoting *Quarles*, 467 U.S. at 658-59), but they "need not be posed as narrowly as possible, because '[p]recision crafting cannot be expected' in the circumstances of a tense and dangerous arrest." *Estrada* 202 F.3d at 612 (quoting *Newton*, 369 F.3d at 678).

Here, the Arresting Officer was aware that one gun had been dropped underneath a car that was parked with its door ajar and that was accessible to the four men standing around it. Those men outnumbered the officers, who were plainly concerned about the possibility of additional weapons. The Arresting Officer's question about the ownership and control of the open Chrysler therefore "'related to an objectively reasonable need to protect the police" from the possibility of potential sources of danger – including other firearms – in or around the car. *United States* v. *Newton*, 369 F.3d at 677 (internal quotation marks omitted); *see United States* v. *Estrada*, 430 F.3d 606, 612 (2d Cir. 2005) ("[A] question that plainly encompasses safety concerns, but is broad enough to elicit other information, does not necessarily prevent application of the public safety exception when safety is at issue and context makes clear that the question primarily involves safety.").

The Honorable Denise L. Cote
October 9, 2007
Page 7

have known, that his questions about ownership of the Chrysler or the purpose of the defendant's car key would elicit incriminating information. *See Rosa*, 396 F.3d at 221 (explaining that, to determine whether a particular question falls within the routine-booking exception or instead compels *Miranda* protection, courts conduct "an objective inquiry: Should the police have known that asking the [question] would elicit incriminating information?"). The defendant was issued a summons for an open alcohol container violation and placed under arrest for possession of a firearm; from the perspective of a reasonable officer in the Arresting Officer's situation, the Chrysler had nothing to do with those offenses, and the fact of its ownership was plainly not incriminating. Rather, that fact became incriminating only after the booking process was complete, when the Arresting Officer conducted a routine inventory search and discovered cocaine inside the car. *Cf. United States* v. *Henley*, 984 F.2d 1040 (9th Cir. 1993) (holding that officer's question eliciting admission that defendant owned a particular car required provision of *Miranda* warnings only because the police previously "had identified [the] car as the one used in the bank robbery" they were in the process of investigating; "An officer investigating a bank robbery who has the getaway car but isn't sure who owns it should well know that asking a suspect if he's the owner of the vehicle is reasonably likely to elicit an incriminating answer."). Thus, the questions that elicited the defendant's second and fourth statement – who owned the Chrysler and what the key in the defendant's pocket was for – did not constitute interrogation and need not have been preceded by *Miranda* warnings.

Finally, the evidence at the hearing will show that the defendant's third statement – "Damn, you got me" – was spontaneous and not the result of police questioning. Accordingly, the Fifth Amendment does not prohibit introduction of that statement at trial. *See Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.")

    B.    The Officers Were Authorized To Impound The Defendant's Car And Required To Search Its Trunk

The defendant contends that the impoundment of his car was improper and that the officers violated his Fourth Amendment rights by conducting an inventory search that yielded the bag of cocaine in its trunk. The defendant's argument is premised on a false statement of the facts. The Government intends to show at a hearing that under the true facts, the officers' actions were entirely proper under the Fourth Amendment.

    1.    Applicable Law

The police are authorized to impound an automobile "in the interests of public safety and as part of what the Supreme Court has called 'community caretaking functions.'" *South Dakota* v. *Opperman*, 428 U.S. 364, 368 (1976) (quoting *Cady* v. *Dombrowski*, 413 U.S. 433, 441 (1973)); *see United States* v. *Perea*, 986 F.2d 633, 643-644 (2d Cir. 1993) ("When a person is arrested in a place other than his home, the arresting officers may impound the personal effects that are with him at the time to ensure the safety of those effects or to remove nuisances from the

The Honorable Denise L. Cote
October 9, 2007
Page 8

area"). Courts give "deference to police caretaking procedures designed to secure and protect vehicles and their contents while in police custody." *Colorado* v. *Bertine*, 479 U.S. 367, 372 (1987). The Supreme Court has squarely held that officers do not violate the Fourth Amendment when they impound a car that is parked illegally. *Opperman*, 428 U.S. at 365; *see U.S.* v. *Ochs*, 595 F.2d 1247, 1253 (2d Cir. 1979).

"When the police impound vehicles," they "frequently perform inventory searches." *United States* v. *Mendez*, 315 F.3d 132, 137 (2d Cir. 2002); *see Opperman*, 428 U.S. at 376 (holding admissible evidence discovered during inventory search of an automobile). "Such searches are constitutional under the Fourth Amendment because they 'serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'" *Mendez*, 315 F.3d at 137 (quoting *Bertine*, 479 U.S. at 372). "Today, 'the inventory search constitutes a well-defined exception to the warrant requirement.'" *Mendez*, 315 F.3d at 137 (quoting *Illinois* v. *Lafayette*, 462 U.S. 640, 648 (1983)). Such a search will be upheld as long as the officers "act in good faith pursuant to 'standardized criteria . . . or established routine." *United States* v. *Thompson*, 29 F.3d 62, 65 (2d Cir. 1994). "The existence of such a valid procedure may be proven by reference to either written rules and regulations or testimony regarding standard practices." *Id.* (citations omitted).

2.    Discussion

The defendant's challenge to the inventory search is based on his assertion that his Chrysler was not the "dark car" around which he and the other men were standing when he was arrested, and under which the officers found a loaded handgun. (Mem. 4-5). The Government contends that this assertion is false, and it intends to show at an evidentiary hearing that the Chrysler the officers impounded and searched was the same illegally parked car the defendant was standing next to and dropped a gun underneath before he was arrested. Under those facts, the officers' decision to impound the car was plainly "reasonable" and therefore consistent with the Fourth Amendment.[3]

---

[3] In the alternative, the Government contends that, even if the defendant were correct about the facts surrounding the seizure of his car, the police nevertheless possessed legal justification to impound the car and to conduct an inventory search. As the court noted in *United States* v. *Mundy*, 806 F.Supp. 373, 376 (E.D.N.Y. 1992), officers may properly exercise their discretion to impound where a car "would be unattended, even if legally parked, and the police have reason to believe that a suspect will be separated from his vehicle for a long period of time." *United States* v. *Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980) (declaring reasonable the impoundment of a lawfully parked car where the officers had reason to believe the defendant would be in custody for an extended period).

Under the defendant's version of the facts, his car was parked legally on a public street and the police had not seen it used in connection with criminal activity. The police knew,

The Honorable Denise L. Cote
October 9, 2007
Page 9

In addition, once the Chrysler was properly impounded, the inventory search was valid because it was conducted pursuant to written NYPD procedures, attached hereto as Exhibit A. Under those procedures, officers are required to conduct an inventory search when a vehicle is in the custody of the NYPD, and they are further required to search the trunk of the car. (Exhibit A, ¶ 1.a(10)). The inventory search of the Chrysler was therefore proper, and the defendant's challenge to the admissibility of the evidence seized from the trunk of his car fails.

## CONCLUSION

Accordingly, for the reasons set forth above, the Government respectfully requests that the Court deny the defendant's motion to suppress after an evidentiary hearing.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By: _____
David A. O'Neil
Assistant United States Attorney
Telephone: (212) 637-2533

Enclosures
cc (w/encl.):    Toni Marie Angeli, Esq.
*By Hand and ECF Filing*

---

however, that the car's owner had been arrested for possession of a loaded firearm, an offense that carries the potential for an extended period of imprisonment under New York law. The defendant appears to contend that in those circumstances, officers are constitutionally prohibited from impounding the car to safeguard it and to protect the police from a potential claim arising from damage to the vehicle. That contention conflicts with persuasive authority. *See, e.g., United States* v. *Mundy*, 806 F.Supp. 373, 376 (E.D.N.Y. 1992); *United States* v. *Perea*, 986 F.2d 633, 643-644 (2d Cir. 1993); *United States* v. *Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980) *United States* v. *Best*, 415 F.Supp.2d 50, 53-57 (D. Conn. 2006) (citing additional cases holding that officers may impound a legally parked vehicle solely in order to safeguard it following the owner's arrest). Absent a "showing that the pol ice chose to impound the defendant's [car] in order to investigate suspected criminal activity" – a showing that the defendant has failed to make or even to proffer – impoundment of the Chrysler was a permissible "exercise of police discretion" even on the defendant's version of the facts. *Bertine*, 479 U.S. at 375-376.





**PATROL GUIDE**

| Section: Property - General | | Procedure No: 218-13 | |
|---|---|---|---|
| INVENTORY SEARCHES OF AUTOMOBILES<br>AND OTHER PROPERTY | | | |
| DATE ISSUED:<br>01/01/2000 | DATE EFFECTIVE<br>01/01/2000 | REVISION NUMBER: | PAGE.<br>1 of 2 |

**PURPOSE**    To protect property, ensure against unwarranted claims of theft, and protect uniformed members of the service and others against dangerous instrumentalities.

**PROCEDURE**    Whenever any property comes into the custody of this Department an inventory search will be conducted as follows:

IF THE CONTENTS TO BE INVENTORIED ARE IN AN AUTOMOBILE

**UNIFORMED**    1.    Search the interior of the vehicle thoroughly.
**MEMBER OF**        a.    This search should include any area that may contain valuables
**THE SERVICE**            including, but not limited to:
                (1)    Glove compartment
                (2)    Console
                (3)    Map pockets in or on doors
                (4)    Areas under the seats and in and around the seat stuffing
                    and springs
                (5)    Under the floor mats
                (6)    Under and behind the dashboard
                (7)    Inside the ashtrays
                (8)    In the air vents where accessible
                (9)    Under the hood
                (10)    Trunk.

**NOTE**    *Any closed container may be opened and its contents inventoried. If any of the above items are locked, the uniformed member of the service concerned should make every attempt to obtain the keys from the driver, owner, or passenger.*

        2.    Force open trunk, glove compartment, etc. only if it can be done with
            minimal damage, unless:
            a.    Reasonably suspect that the item contains weapons, explosives,
                hazardous materials or contraband.
            b.    The contents are in plain view.
            c.    The contents can be inferred from the outward appearance of the
                container, e.g., gun cases, toolboxes (which may contain burglar's
                tools) etc.
            d.    Consent of the owner to break open the locked item.
        3.    Remove all valuables from the vehicle and voucher on a separate
            **PROPERTY CLERK'S INVOICE (PD521-141)**

**NOTE**    *Property of little value that is left inside the car e.g., old clothes, cassette tapes, and vehicle parts, should within reason, be listed in the uniformed members ACTIVITY LOG (PD112-145) and cross referenced to the invoice number covering any valuables removed*

NEW • YORK • CITY • POLICE • DEPARTMENT

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 218-13 | 01/01/2000 | | 2 of 2 |

ADDITIONAL
DATA

*Property that is not inventoried from an automobile but is possessed or under the control of an arrested individual, may be inventoried and all items found therein may be vouchered as prisoner's property. If a locked container such as a brief case or safe is inventoried, it should not be forced open if to do so would cause more than minimal damage, unless the circumstances described in Step 2, subdivisions a, b, c, or d are present.*

RELATED
PROCEDURES

*Invoicing Property (P.G. 218-01)*

FORMS AND
REPORTS

*PROPERTY CLERK'S INVOICE (PD521-141)
ACTIVITY LOG (PD112-145)*

NEW • YORK • CITY • POLICE • DEPARTMENT