UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA           :

            - v. -                    :

RAFAEL BARRIOS,                    :

          Defendant.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ECF CASE

07 Cr. 658 (DLC)

## GOVERNMENT'S POST-HEARING MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO SUPPRESS

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

David A. O'Neil
Assistant United States Attorney

    - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA         :

            - v. -                :    07 Cr. 658 (DLC)

RAFAEL BARRIOS,                   :

            Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## GOVERNMENT'S POST-HEARING MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO SUPPRESS

### Preliminary Statement

The Government respectfully submits this post-hearing memorandum of law in further opposition to the defendant's motion to suppress statements and physical evidence obtained pursuant to his arrest on March 30, 2007. Only two issues remain in dispute following the evidentiary hearing this Court conducted on October 25, 2007: (1) whether police officers acted within their discretion in seizing the defendant's car, which was then parked unlawfully in a bus stop, after the defendant had been arrested and was in police custody; and (2) whether the defendant's denial of ownership of that car is admissible at trial because it was not prompted by "custodial interrogation" within the meaning of *Miranda* v. *Arizona*, 384 U.S. 346 (1966). The Government submits that, particularly in light of this Court's factual findings, the clear and straightforward answer to both questions is yes. The Government therefore requests that this Court deny the defendant's motion in full.

1

## Argument

**I.    Under Well Established Law, Police May Impound A Vehicle In The Circumstances Presented Here.**

The defendant first challenges the reasonableness under the Fourth Amendment of the officers' decision to seize his car after he was arrested for unlawfully possessing a loaded gun. As the Government explained in its initial opposition to this motion, the police are authorized to impound an automobile "in the interests of public safety and as part of what the Supreme Court has called 'community caretaking functions.'" *South Dakota* v. *Opperman*, 428 U.S. 364, 368 (1976) (quoting *Cady* v. *Dombrowski*, 413 U.S. 433, 441 (1973)); *see United States* v. *Perea*, 986 F.2d 633, 643-644 (2d Cir. 1993). Courts give "deference to police caretaking procedures designed to secure and protect vehicles and their contents while in police custody." *Colorado* v. *Bertine*, 479 U.S. 367, 372 (1987). In particular, the Supreme Court has squarely concluded that officers do not violate the Fourth Amendment when they impound a car that is parked illegally. *Opperman*, 428 U.S. at 369. According to the Court, "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id.*

That principle is controlling here. At the conclusion of the evidentiary hearing, this Court found, among other things, that the defendant was arrested standing next to his car, which was then "at least partially parked in a bus stop." (Tr. 77). Accordingly, because the car was parked illegally and impeding traffic, the police officers acted reasonably in impounding it.

The officers' decision to impound the car was reasonable for an additional reason. The defendant was in police custody and it was reasonable to believe he would remain there for an

2

extended time because he had been arrested for unlawful possession of a loaded gun. His car – an expensive luxury car that, as one officer testified, "stuck out of place" because it "was newer than all the other cars that were in the neighborhood" (Tr. 56) – was parked on a public street in a high-crime area. As Judge Weinstein held in *United States v. Mundy*, 806 F.Supp. 373, 376 (E.D.N.Y. 1992), officers may properly exercise their discretion to impound where a car "would be unattended, even if legally parked, and the police have reason to believe that a suspect will be separated from his vehicle for a long period of time." *United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980) (declaring reasonable the impoundment of a lawfully parked car where the officers had reason to believe the defendant would be in custody for an extended period); *United States v. Perea*, 986 F.2d 633, 643-644 (2d Cir. 1993); *United States v. Best*, 415 F.Supp.2d 50, 53-57 (D. Conn. 2006) (citing and discussing additional cases holding that officers may impound a legally parked vehicle solely in order to safeguard it following the owner's arrest). That rule stems in part from need to protect police officers from claims arising from vandalism or theft of the defendant's vehicle or its contents. *See, e.g., id.* at 56-57. Thus, the Fifth Circuit's reasoning in *Staller*, which has been adopted in many other decisions, applies equally to this case:

> The officers who made the arrest had every reason to expect that appellants would be separated from their vehicle for an extended period of time.... [T]he officers were aware that a car parked overnight [in a public area] runs an appreciable risk of vandalism or theft. The likelihood of such harm would increase with every passing day. Under these circumstances taking custody of [the defendant's] car was a legitimate exercise of the arresting officer's community caretaking function.

616 F.2d at 1290.

The defendant apparently contends that, despite these rationales, the seizure of his car was unreasonable because the officers did not retrieve the car until after he was under arrest. On

3

that basis, the defendant argues that the seizure was a "subterfuge" designed to permit the officers to conduct an inventory search, rather than to protect the vehicle and its contents. (Tr. 71-72). That contention is entirely meritless and unsupported by the record. The testimony at the hearing established that the officers attempted to determine the ownership of the car on the scene for precisely the reasons the law permits. As this Court found, after Officer Sam learned through a registration search that the car was registered to a "Rafael Barrios," he asked each of the men, including the defendant, whether his name was Rafael Barrios. (Tr. 21, 79). He also reviewed the summonses to see whether the name "Rafael Barrios" had been provided to the other officers. (*Id.*). The purpose of these questions, Officer Sam testified, was that "there was a vehicle on the scene that was illegally parked. It was within a bus lane. And if it belonged to the defendant, it was my responsibility to safeguard the vehicle and whatever contents the vehicle had within it." (Tr. 21). The only reason that the officers did not seize the car immediately was that the defendant lied about his ownership of the car and gave a false name. As soon as Officer Sam realized that the car was the defendant's, he immediately notified his supervisor, who instructed another officer to retrieve it for safekeeping. (Tr. 66, 80). Accordingly, the decision to impound the car was entirely proper, and there is no merit to the defendant's Fourth Amendment challenge to the admissibility of the physical evidence obtained as a result.

## II.     The Defendant's Statement Denying Ownership Of The Chrysler Was Not Made In Response To Custodial Interrogation And Is Therefore Admissible

Similar considerations defeat the defendant's challenge to the admissibility of his false denial that he owned the car – in particular, the statement "it's not my car" in response to Officer Sam's question. (Tr. 19). Because that statement was not made in response to custodial

interrogation, it may be introduced at trial consistent with the Fifth Amendment.

As the Government explained in its pre-hearing opposition, because "the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation [under *Miranda*] extend[s] only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301-02 & n.5 (1980). Under that rule, police inquiries that are "normally attendant to arrest and custody," *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (plurality opinion), or that are "normally and reasonably related to police administrative concerns," *Rosa v. McCray*, 396 F.3d 210, 221 (2d Cir. 2005), do not generally trigger *Miranda* concerns.

The testimony at the hearing established beyond dispute that Officer Sam's inquiry about the ownership of the Chrysler falls within this routine-administrative category of questions. In deciding the applicability of that exception, courts conduct "an objective inquiry: Should the police have known that asking the [question] would elicit incriminating information?" *Rosa*, 396 F.3d at 221. Here, the answer to that question was plainly no. At the time Officer Sam asked who owned the Chrysler, the defendant was approached for a suspected open alcohol container violation and placed under arrest for possession of a firearm (Tr. 35-36); from the perspective of a reasonable officer in Officer Sam's situation, the Chrysler had nothing to do with those offenses, and the fact of its ownership was plainly not incriminating. Indeed, Officer Sam testified that he asked that question only because it was relevant to the "routine administrative concer[n]" of his responsibilities regarding the Chrysler. *Rosa*, 396 F.3d at 221. (Tr. 23) (Officer Sam's testimony that he asked about the ownership of the Chrysler "[b]ecause there was a vehicle on the scene that was illegally parked. It was within a bus lane. And if it belonged to the defendant, it was my responsibility to

5

safeguard the vehicle and whatever contents the vehicle had within it."). In response to the defense attorney's questioning, moreover, Officer Sam unequivocally testified that he was not "concerned about investigating any other crimes" regarding the Chrysler; he was not interested in searching the car in order to discover contraband; he did not suspect, and "had no information whatsoever" to indicate, that the defendant was involved in a drug crime or any other kind of crime; and he retrieved the car in order to safeguard the defendant's property and remove it from the bus lane. (Tr. 35-36). On this record, Officer Sam's question about ownership of the Chrysler was not custodial interrogation, and the defendant's answer is admissible.

## Conclusion

For the foregoing reasons, as well as those set forth in the Government's initial opposition to this motion, the motion to suppress should be denied.

Dated: New York, New York
October 29, 2007

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____
David A. O'Neil
Assistant United States Attorney
Southern District of New York
(212) 637-2533

cc:   Bruce A. Barket, Esq.

6