```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
UNITED STATES OF AMERICA,                :
                                         :
              -v-                        :     07 Cr. 658 (DLC)
                                         :
RAFAEL BARRIOS,                          :     OPINION AND ORDER
                   Defendant.            :
                                         :
-----------------------------------------X
```

Appearances:

For the United States of America:
David A. O'Neil
Assistant United States Attorney
1 St. Andrew's Plaza
New York, NY 10007

For Defendant Rafael Barrios:
Bruce Barket
Toni Marie Angeli
Barket & Angeli, PC
666 Old Country Rd., Suite 600
Garden City, New York 11530

DENISE COTE, District Judge:

　　　The defendant Rafael Barrios ("Barrios") filed a motion to suppress the fruits of an inventory search of his car and certain post-arrest statements. To support the motion to suppress he submitted his own affidavit and affidavits from two companions who were with him at the time of his arrest. A hearing was held on October 25, 2007, during which the Government presented testimony from four police officers concerning the circumstances surrounding Barrios's arrest, the

impounding and inventory search of Barrios's car, and his post-arrest statements.[1]  At the conclusion of the hearing, Barrios dropped his challenge to three of the four post-arrest statements addressed in his motion, leaving two issues to be resolved here: (1) whether the police had authority to impound Barrios's car following his arrest,[2] and (2) whether Barrios's un-Mirandized denial of ownership of the car at the scene of his arrest, made in response to an officer's query, can be admitted.  For the following reasons, Barrios's motion is denied.

BACKGROUND

The following findings of fact are drawn from the testimony provided at the October 25 hearing, which I found to be credible.  On the evening of March 30, 2007, Barrios and a number of other individuals were drinking just north of the intersection of 169th Street and Prospect Avenue in the Bronx.  They were gathered next to a black Chrysler 300M with New Jersey

---

[1] Following the presentation of the Government's witnesses, Barrios declined to call any witnesses of his own.

[2] Barrios had argued in his motion that the Government must also demonstrate that the inventory search made following the impounding of the car was conducted pursuant to the police department's standard procedures.  Testimony and evidence was presented on that issue during the hearing, including the admission into evidence of the New York Police Department's Procedure No. 218-13 regarding inventory searches of seized vehicles.  Barrios no longer appears to contest that, once the car was in the police's custody and control, the inventory search was properly conducted.

2

licence plates, which was partially parked in a bus stop. There was a container of alcohol on top of the car. The men were observed by police officers travelling in an unmarked vehicle. The officers stopped their vehicle and Officer Kevin Sam exited the car and quickly approached Barrios and the others. As he approached, he observed Barrios remove an object from his waistband, turn towards the trunk of the car, and throw it under the car. Officer Sam testified that he immediately understood that the object was a gun based on the sound the object made when hitting the ground. Officer Sam pushed Barrios against the car, handcuffed him, and recovered the gun from the ground. He then frisked Barrios and yelled "gun" to his fellow officers. Barrios's companions were then frisked by the other officers on the scene.

It was at this time that Officer Sam noticed that the rear passenger door of the car was slightly ajar, as if it were unlocked. Officer Sam asked the men if they knew to whom the Chrysler belonged. Barrios said that it was not his car, and the others also denied that they owned the car. Officer Sam also asked the defendant for his name, and Barrios stated that his name was "Joel Bennett."

While on the scene, Officer Sam ran a licence plate search and determined that the car was owned by a Rafael Barrios, a New Jersey resident. He asked the defendant if his name was Rafael

3

Barrios, and he said that it was not. Officer Sam also checked the names written on the open alcohol container summonses that had been issued to the other men, and there was no Rafael Barrios listed.

Barrios was taken to the 42nd Precinct. During a search of his person during the booking process, Officer Sam found, <u>inter alia</u>, two bags of marijuana, a wallet containing a driver's licence issued to Rafael Barrios (with a picture of the defendant), and a key for a Chrysler vehicle. Officer Sam asked Barrios what this key was for, and Barrios stated that it belonged to a Chrysler Sebring. Officer Sam gave the key to a lieutenant, who sent two officers to retrieve the Chrysler 300M from the scene and bring it to the 42nd Precinct. The officers used the key taken from Barrios to enter the Chrysler 300M and drove it to the precinct. Officer Sam then conducted an inventory search, during which he discovered a large quantity of cocaine in the trunk.

DISCUSSION

Barrios first argues that the cocaine discovered in the trunk of the Chrysler must be suppressed because the car was not lawfully impounded, and therefore there was no basis for conducting an inventory search. It is well established that evidence obtained during a routine inventory search is

4

admissible, provided that the car is lawfully in police custody. See South Dakota v. Opperman, 428 U.S. 364, 373 (1976).[3] One of the means by which a car lawfully may come into police possession is in connection with the police's "community caretaking function." Id. at 368 (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)). For example, it is "beyond challenge" that the police may impound a vehicle that is parked illegally or otherwise "impeding traffic or threatening public safety and convenience." Id. at 369. Alternatively, a car that is legally parked in a public place, such as a street or parking lot, but that will be inaccessible to its owner for an extended period -- as a result of an arrest, for example -- may also be impounded in order to safeguard the vehicle if such a step is reasonable under the circumstances. See United Sates v. Best, 415 F. Supp. 2d 50, 53-57 (D. Conn. 2006) (collecting cases); see also United States v. Mundy, 806 F. Supp. 373, 376 (E.D.N.Y. 1992) (Weinstein, J.). The "community caretaking function" is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute," Cady, 413 U.S. at 441, and

---

[3] Barrios relies primarily on New York State law to support his suppression claim. Whether the evidence discovered in the trunk of Barrios's car will be admitted in this federal criminal trial is a question of federal law, not state law, despite the fact that the search and seizure was conducted by New York City police officers. See United States v. Pforzheimer, 826 F.2d 200, 204 (2d Cir. 1987).

5

thus seizures and inventory searches conducted in connection with that function do not offend the Fourth Amendment as long as they are warranted "either in terms of state law or sound police procedure." Id. at 447.  As a result, evidence discovered during "community caretaking" activities is ordinarily admissible at trial, as searches and seizures made for routine administrative purposes are outside the warrant requirement and the probable cause standard.  See Colorado v. Bertine, 479 U.S. 367, 371 (1987).

    Given the factual scenario presented here, the police were legally justified in impounding Barrios's vehicle.  While the defendant was being booked, Officer Sam discovered that his name was Rafael Barrios, which he already knew was the name of the owner of the Chrysler illegally parked in the bus stop on Prospect Avenue with its rear door ajar.  Officer Sam also found that Barrios was in possession of a key to a Chrysler.  Having made these discoveries, it was then apparent that the owner of the Chrysler (now known to be the defendant Barrios) would not be able to return to the vehicle in the near future in light of his arrest, either to secure the vehicle -- and therefore prevent joyriding or vandalism -- or to remove it from the bus stop.  It is not necessary to decide whether any of these factors, standing alone, would be sufficient to justify the impounding of a vehicle, as the confluence of circumstances here

rendered Officer Sam's decision to have Barrios's car brought to the precinct an eminently reasonable exercise of the police department's "community caretaking" responsibilities.

In his post-hearing brief, Barrios contends that this seizure (and thus the subsequent search) was a "thinly veiled ruse for general rummaging in an attempt to discover incriminating evidence." This argument fails. The Supreme Court has recognized that when a search is conducted "pursuant to a general scheme absent individualized suspicion," such as an inventory search, an "inquiry into purpose at the programmatic level" is sometimes required. City of Indianapolis v. Edmond, 531 U.S. 32, 45-46 (2000). This inquiry into programmatic purpose, however, "is not an invitation to probe the minds of individual officers acting at the scene." Id. at 48. It is not contested that the inventory search itself, including the opening of the trunk, was conducted according to written New York City Police Department procedures, and thus is not open to challenge under a case such as Florida v. Wells, 495 U.S. 1 (1990), cited by Barrios, in which the Supreme Court affirmed the suppression of the fruits of an inventory search conducted by a police department that "had no policy whatever" regarding the kind of search conducted in that case. Id. at 4-5. Moreover, to the extent that Edmond can be read to permit Barrios to challenge the programmatic purpose behind the seizure

7

itself, the discussion above establishes that Barrios's vehicle -- which credible testimony showed was illegally parked, potentially unlocked, likely to be unattended for an unknown but significant period of time -- was seized pursuant to the "community caretaking" policy that is inherent to the law enforcement function, see generally United States v. Rodriguez-Morales, 929 F.2d 780, 784-85 (1st Cir. 1991), and that has been repeatedly endorsed by both the Supreme Court and the courts of this circuit.[4]

Barrios also challenges the admissibility of his statement at the scene denying ownership of the Chrysler, which was made while in handcuffs but prior to any Miranda warnings.  The resolution of this claim turns on whether Officer Sam's inquiry as to the ownership of the car was "interrogation" within the meaning of Miranda.  As the Second Circuit recently summarized:

> Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.  [T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are

---

[4] To the extent that Barrios's challenge is also based on the time that elapsed between the arrest and the impounding of the car, or the fact that Barrios was no longer near the car at the time of the seizure, that argument may swiftly be rejected. Both of these factors came into play solely because Barrios gave a false name at the scene and falsely denied ownership of the car. The lawfulness of the seizure should not hinge on the truthfulness of the defendant's representations at the scene.

8

> reasonably likely to elicit an incriminating response from the suspect.

Rosa v. McCray, 396 F.3d 210, 220-21 (2d Cir. 2005) (citation omitted) (emphasis added). The Government argues that Officer Sam's question was both "normally attendant to arrest and custody" and, in any event, not "reasonably likely to elicit an incriminating response" from Barrios.

In Rosa, Court of Appeals held that questions "normally and reasonably related to police administrative concerns" are permissible without Miranda warnings. Id. at 221. Although this exception to the Miranda rule is typically applied to "pedigree" or "booking" questions regarding the defendant's identity or biography, see, e.g., id. (hair color); United States v. Gotchis, 803 F.2d 74, 78-79 (2d Cir. 1986) (employment status); United States ex rel Hines v. LaVallee, 521 F.2d 1109, 1112-13 (2d Cir. 1975) (marital status), Officer Sam's inquiry regarding the ownership of the car is nevertheless the kind of "[r]outine question[] . . . innocent of any investigative purpose," that does "not pose the dangers Miranda was designed to check." United States v. Carmona, 873 F.2d 569, 573 (2d Cir. 1989) (citing Gotchis, 803 F.2d at 79). As noted above, at the time Officer Sam inquired as to the ownership of the car, Barrios had only been arrested for possession of a firearm, and as Officer Sam testified, he had no basis to believe that

9

Barrios was involved in any other criminal activity, or that the car would be connected to any incriminating evidence. Rather, the testimony establishes that Officer Sam's question was asked in connection with his "community caretaking" responsibilities with respect to the illegally parked, potentially unlocked car around which Barrios and the other men were gathered. Under these circumstances, Officer Sam's question did not constitute "interrogation" under Miranda, and thus Barrios's response may be admitted.

CONCLUSION

Barrios's motion to suppress (1) the evidence obtained as a result of the inventory search of his car following his arrest, and (2) his statement denying ownership of the vehicle, is denied.

SO ORDERED:

Dated:   New York, New York
         November 1, 2007

                                    _____
                                         DENISE COTE
                                    United States District Judge