

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*



*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 13, 2008

**By Hand and Facsimile**

The Honorable Robert P. Patterson
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street, Room 2550
New York, NY 10007

      Re:  **United States v. Rafael Barrios**
           **07 Cr. 658 (RPP)**

Dear Judge Patterson:

      The Government respectfully submits this letter to notify Your Honor and defense counsel of our intention to call Special Agent Matthew G. Donahue of the Drug Enforcement Administration (DEA) to testify as an expert witness at trial. The proposed expert testimony would consist of information about: (i) the street value of cocaine; (ii) the dosage quantities of cocaine associated with personal use and distribution; and (iii) the purposes of certain tools of the drug trafficking trade, including firearms, pre-paid cellular telephones, and packaging material for resale of cocaine.

      Special Agent Donahue is eminently qualified to testify as an expert on the above-described subject matters. He is currently a Group Supervisor for the DEA New York Field Division Organized Crime Drug Enforcement Strike Force. In that capacity, he supervises agents conducting narcotics investigations ranging from street level dealers to international drug trafficking and money laundering organizations. His duties require him to maintain an active and detailed knowledge of the current methods of distributing, packaging, and marketing cocaine, as well as the latest drug trafficking trends on the local and national levels.

      Since joining the DEA in 1991, Special Agent Donahue has also served with the Philadelphia Field Division and as a Group Supervisor in the Bogota, Colombia Country Office. During this 17 years of experience, Special Agent Donahue has

Hon. Robert P. Patterson
February 13, 2008
Page 2

participated in hundreds of significant drug trafficking investigations involving both wholesale distributors and street-level sellers of cocaine. He has also participated in over 100 arrests of drug traffickers, made hundreds of seizures of cocaine, and debriefed hundreds of confidential sources and cooperating defendants.

Special Agent Donahue has received extensive training in the matters about which he would testify, including nearly ten separate training programs about narcotics and drug investigations. He has also taught such training programs, including seminars on cocaine and the methods of packaging it, and he has lectured at Saint Joseph University and West Chester University on the effects of illegal drugs. Special Agent Donahue has been qualified and testified as an expert witness in this District, in the Eastern District of Pennsylvania, and the District of Delaware.

The admissibility of expert testimony is, of course, governed by Rule 702 of the Federal Rules of Evidence. That rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702. Special Agent Donahue plainly has "specialized knowledge" about drug trafficking that would assist the jury in understanding the evidence.

The Indictment contains two Counts. Count One alleges that the defendant, Rafael Barrios, possessed cocaine with the intent to distribute it. Count Two charges that he carried a firearm during and in relation to, and possessed the firearm in furtherance of, that drug trafficking offense. To prove these charges, the Government must show, among other things, that (i) the defendant intended to distribute (rather than to use personally) the cocaine that was found in the trunk of his car and; (ii) the firearm that he carried and possessed had some nexus with the possession or distribution of the narcotics.

Hon. Robert P. Patterson
February 13, 2008
Page 3

The Government submits that, in evaluating these charges, the jury will plainly benefit from expert testimony about the value of cocaine, the quantities of cocaine associated with distribution as opposed to personal use, and the function of tools of the drug dealing trade, including pre-paid cellular telephones and resale packaging material. The Government also intends to elicit general testimony about the role of firearms in drug trafficking, limited specifically to the following propositions:

- Drug trafficking is a dangerous business;

- The primary reason that drug traffickers carry firearms is to provide protection for themselves and their drugs from robbery;

- Drug traffickers require protection from robbery because they are often carrying valuable merchandise that, if stolen, cannot be reported to the police or claimed through insurance; and

- Often a drug trafficker may possess drugs for resale that are owned by another trafficker, and therefore the drug dealer will owe significant amounts of money if the drugs are stolen.

The Second Circuit has approved of the use of expert testimony on the subjects the Government has identified. The Circuit has held, for example, that "[m]atters such as the price of a kilogram of cocaine in New York City are appropriate areas for [expert] testimony." United States v. Quiroz, 13 F.3d 505, 514 (2d Cir. 1993); see United States v. Tapia-Ortiz, 23 F.3d 738, 741 (2d Cir. 1994) (holding that "[t]estimony about the weight, purity, dosages, and prices of cocaine clearly relates to knowledge beyond the ken of the average juror" and is therefore properly admitted through an expert). The Circuit has similarly allowed expert testimony on certain practices of drug dealers, including specifically the devices they use to communicate. See, e.g., United States v. Ginsberg, 758 F.2d 823, 830 (2d Cir. 1985) (upholding introduction of expert testimony on use and role of beepers in narcotics trafficking). See also United States v. Victor Martinez, S13 06 Cr. 591 (RPP), September 7, 2004, transcript at 542-43 (permitting expert testimony about glassines and wax paper materials used to package heroin for resale).

Hon. Robert P. Patterson
February 13, 2008
Page 4

       This Court has also repeatedly permitted expert testimony regarding the price of narcotics, the manner and materials in which drugs are packaged for resale on the street, and the function of tools of the drug trafficking trade, including firearms. See, e.g., United States v. Rafael Barrios, 07 Cr. 658 (RPP), November 28, 2007, Tr. at 106-07 (permitting expert testimony on each of these subjects; concluding that general testimony about the role of firearms in drug trafficking is proper because jurors are unfamiliar "with how drugs are transacted on a wholesale level," and "therefore, it seems to me the testimony is . . . something that is esoteric, as far as the[ jurors] are concerned"); id. at 119, 125;[1] United States v. Victor Martinez, S13 06 Cr. 591 (RPP), September 7, 2004, Tr. at 537-544; United States v. Edwin Fernandez, 03 Cr. 973 (RPP), May 20, 2004, Tr. at 2 (allowing expert testimony to "describe the characteristics and operating methods of narcotics trafficking." Those rulings comport with the law in the Second Circuit, which has "consistently upheld the use of expert testimony to explain . . . the operations of drug dealers." See supra; United States v. Dukagjini, 326 F.3d 45, 52 (2d Cir. 2003). See generally United States v. Rivera, 971 F.2d 876 (2d Cir. 1992) (affirming the admission of expert testimony "regarding [narcotics] production, distribution and use"); United States v. Ruggiero, 928 F.2d 1289. 1304 (2d Cir. 1991) ("Courts have consistently recognized . . . that the operations of narcotics dealers are a proper subject for expert testimony under Fed. R. Evid. 702.") (internal quotation marks omitted); see also United States v. Price, 458 F.3d 202 (3d Cir. 2006) ("It is well established that experts may describe, in general and factual terms, the common practices of drug dealers.").

---

[1] The proffered testimony about the role of firearms in drug trafficking is also admissible for a second reason. If the defendant disputes at trial that his possession of the firearm was related to his possession of the narcotics seized from the trunk of his car, then the expert testimony regarding firearms is properly admitted to refute that contention. See United States v. Taylor, 18 F.3d 55 (2d Cir. 1994) (holding that expert testimony that drug dealers prefer the type of gun found in the defendant's apartment is particularly admissible "when the defense seeks to discredit the government's version of events as improbable criminal behavior"; "Because in this case Taylor specifically disputed the government's claims that the gun found in his apartment was linked to his drug trafficking, admission of testimony contesting Taylor's claims was admissible."); see also United States v. Cruz, 981 F.2d 659, 664 (2d Cir. 1992).

Hon. Robert P. Patterson
February 13, 2008
Page 5

      In sum, the Government respectfully submits that the proposed expert testimony of Special Agent Donahue would assist the jury in evaluating the evidence in this case and should be permitted.

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney
                              Southern District of New York

                   By: _____
                              DAVID A. O'NEIL
                              ANIRUDH BANSAL
                              Assistant United States Attorneys
                              (212) 637-2533/2516

cc:   Bruce A. Barket, Esq.
      (fax: 516-745-0596)